**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**GEORGE W. MYERS,**

**Petitioner,**

**v.**

**DON MILLS,**

**Respondent.**

**Civil No. 08-1032-BR**

**OPINION AND ORDER**

**C. RENEE MANES**
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

Attorney for Petitioner

**JOHN R. KROGER**
Attorney General
**KRISTEN E. BOYD**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

Attorneys for Respondent

**BROWN, Judge.**

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court **DENIES** the Petition for Writ of Habeas Corpus.

**BACKGROUND**

On June 24, 2002, a Lane County grand jury indicted Petitioner on one count of Assault in the First Degree. The charge arose from an altercation in the early morning hours of May 28, 2002.

That night, Petitioner and his friend, Robert Drummonds, were drinking at Drummonds' house. Petitioner became jealous about Drummonds' relationship with Petitioner's wife. Petitioner left Drummonds' house and returned a short while later carrying a bottle of wine. When Drummonds opened the door, Petitioner struck him in the head with the bottle. Drummonds' injuries resulted in permanent scarring.

On September 12, 2002, the Honorable Maurice Merten conducted a stipulated facts trial. The prosecutor set forth the facts leading to the charge. The prosecutor noted that Drummonds' neighbor, Tracy Rice, saw Petitioner walk up to Drummonds' house with the bottle. Within a very short time after Rice saw Petitioner walk up to Drummonds' house, no more than 30 seconds,

she heard the bottle break. Petitioner stipulated to the facts presented by the prosecutor, and Judge Merten entered a guilty verdict.

On September 26, 2002, the Honorable Lyle Velure conducted a sentencing hearing. After receiving testimony from Petitioner and from Drummonds, Judge Velure imposed a 90-month minimum sentence consecutive to a 38-month sentence Petitioner previously received for a probation revocation on an earlier conviction for assault against his wife.

Petitioner filed a direct appeal. His court-appointed attorney filed a *Balfour* brief.[1] Petitioner was provided the opportunity to file a Section B brief, which he did. In his *Pro Se* Supplemental Brief, Petitioner raised one claim for relief: trial court error in convicting the Petitioner of Assault in the First Degree, when the evidence supported, at most, a conviction of Assault in the Third Degree. Resp. Exh. 105, p. 3. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme

---

[1]A *Balfour* brief allows appointed counsel to meet the constitutional requirement of "active advocacy" without violating rules of professional conduct. *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991). Section A, signed by counsel, contains a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal, but contains no assignments of error or argument. Section B, signed only by the appellant is a presentation of the issues the appellant seeks to raise but that counsel considers to be frivolous. *Balfour*, 311 Or. at 451-52.

Court denied review. *State v. Myers*, 198 Or. App. 533, 109 P.3d 803, *rev. denied*, 338 Or. 681, 115 P.3d 246 (2005).

Petitioner then sought state post-conviction relief ("PCR"). In his PCR petition, he alleged three claims for relief: (1) ineffective assistance of counsel for failure to ensure Petitioner's agreement to a stipulated facts trial was knowing, voluntary, and intelligent; (2) trial court error for failure to explain specifics of a stipulated fact trial and ensure Petitioner's agreement was knowing, voluntary, and intelligent; and (3) trial court error in imposing sentence. Following an evidentiary hearing, the PCR trial judge denied relief.

Petitioner appealed. Again, court-appointed counsel filed a *Balfour* brief. Petitioner submitted a Section B raising one claim for relief: ineffective assistance of counsel for failure to ensure Petitioner's agreement to a stipulated facts trial was knowing, voluntary, and intelligent.

The state filed a motion for summary affirmance asserting that the appeal should be dismissed because "no substantial question of law is presented by the appeal." The state argued Petitioner's Section B did not identify any error committed by the PCR trial court and, instead, merely re-argued that trial counsel did not inform Petitioner of the consequences of a stipulated-facts trial, contrary to the PCR court's findings.

Petitioner did not file a response to the state's motion for summary affirmance. The Oregon Court of Appeals granted the motion, stating in its Order of Summary Affirmance:

> Respondent has moved pursuant to ORS 138.225 for summary affirmance on the ground that the appeal does not present a substantial question of law. The court determines that the motion is well-taken and that the appeal does not present a substantial question of law. The motion is granted.

Resp. Exh. 123.

Petitioner sought review from the Oregon Supreme Court. In his Petition for Review, he incorporated by reference his brief to the Oregon Court of Appeals. The Oregon Supreme Court denied review. Resp. Exh. 126.

On September 2, 2008, Petitioner filed his habeas corpus action in this Court. In his Petition for Writ of Habeas Corpus, he alleges three claims for relief:

> Ground One: Ineffective assistance of Counsel as Defense Counsel failed to exercise reasonable and professional skills and judgment. Counsel failed to develop and offer exculpatory evidence from key witness[es] for Petitioner in this case, so therefore counsel has also not allowed Petitioner the right of confrontation and to testify in his own trial and by counsel not allowing Petitioner to go to trial, counsel suppressed the exculpatory evidence and therefore the Petitioner has suffered prejudice as a result in violation of his Due Process and Fair Trial and Sentencing under Article 1, Section 2 and 33 of the Oregon State Constitution and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and the Due Process Clause of the United States Constitution.

> Ground Two: The trial court erred in not explaining the specifics of a stipulated facts trial to the Petitioner and his rights that was waiving and as a result he has had his rights violated. When the judge made the statement, there will be no real suspense as to the outcome of this case, if the Petitioner had known the language of the court by that statement, Petitioner would have never taken a stipulated facts trial. Petitioner had the right to know what the court were talking about, thus he did not know, so his rights of the Fifth, Sixth, and the Fourteenth Amendments of the United States of American Constitution and Article 1, Section 2 of the Oregon Constitution.

> Ground Three: Trial court erred in imposing a sentence which [exceeded] the presumptive sentence and the sentence was contrary to the governing statute. Trial court exceeded its sentencing authority by leaving the presumptive sentence outlined for the charged [crime] on the gridblock. Petitioner's jury rights were violated in light of the Sixth and Fourteenth Amendments of the United States of America.

Respondent argues relief should be denied on all of the claims alleged because they were not fairly presented to Oregon's highest court and are therefore procedurally defaulted. In any event, insofar as the claims were presented to the Oregon courts, Respondent argues the decisions denying relief were not contrary to or an unreasonable application of clearly established federal law.

## DISCUSSION

### I. Procedural Default

#### A. Legal Standards

Generally, a state prisoner must exhaust all available state remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-56 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005).

A "fair presentation" requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of the law on which he relies, or a case analyzing the federal constitutional guarantee upon which he relies, or to simply label his claim "federal." *Baldwin*, 541 U.S. at 32, *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Cook v. Schriro*, 538 F.3d 1000, 1025 (2008), *cert. denied*, 129 S. Ct. 1033 (2009). Habeas review of procedurally defaulted claims is barred

unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that failure to consider the claims will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750.

Generally, when a state allows review of a constitutional violation either on direct appeal or by collateral attack, a prisoner need exhaust only one avenue before seeking habeas corpus relief. *Turner v. Compoy*, 827 F.2d 526, 529 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). However, if a state "mandates a particular procedure to be used to the exclusion of other avenues of seeking relief" the correct avenue must be fully exhausted. *Id.*

"In Oregon, most trial errors must be raised by direct appeal to the Oregon Court of Appeals." *Kellotat v. Cupp*, 719 F.2d 1027, 1030 (9th Cir. 1983). However, violations of a defendant's rights which require a further evidentiary hearing for their determination, such as a claim of ineffective assistance of trial counsel, are appropriately determined upon post-conviction review. *Id.*; *State v. McKarge*, 78 Or. App. 667, 668, 717 P.2d 656 (1986) (claim of ineffective assistance of counsel may only be resolved in post-conviction proceeding); *see also Allbee v. Keeney*, 78 Or. App. 19, 21, 714 P.2d 1058, *rev. denied*, 301 Or. 78 (1986) (in

order to warrant post-conviction relief, the error must be of constitutional dimension).

**B. Analysis**

**1. Ground One - Ineffective Assistance of Counsel**

Respondent argues Petitioner procedurally defaulted the claim alleged in Ground One because he did not include the claim in his Petition for Post-Conviction Relief. The Court disagrees. While the claim alleged in Ground One of his federal habeas Petition is not explicitly identical to that alleged in his PCR Petition, the two are sufficiently similar.

In the "Supporting Facts" section of his PCR Petition, Petitioner alleges he "believed that he would have the opportunity to testify to his version of the events" and that "[e]veryone knows that a trial is when you go to court and the District Attorney presents his/her case against you and then you have your defense counsel present your witnesses and case to a jury and then the jury decides your guilt or innocence." Resp. Exh. 110, pp. 3, 4. Here, Petitioner alleges his trial attorney's ineffective assistance prevented him from confronting witnesses and testifying.

Petitioner fairly presented the claim alleged in Ground One to the PCR trial court, and then did so in his brief on appeal to the Oregon Court of Appeals and in his Petition for Review to

the Oregon Supreme Court. As such, he fully exhausted and did not procedurally default the claim alleged in Ground One.

**2. Grounds Two and Three - Trial Court Error in Failing to Explain Specifics of Stipulated Fact Trial and Sentencing Error**

In his direct appeal, Petitioner raised one assignment of error: that the trial court erred in finding Petitioner guilty of Assault in the First Degree because the evidence supported only a finding of guilt of Assault in the Third Degree. Petitioner did not raise either of the two trial court errors alleged in Grounds Two and Three of his federal habeas Petition.

Petitioner did allege both claims in his PCR Petition. Claims of trial error are not, however, appropriately raised in state PCR proceedings. Moreover, Petitioner did not raise either of the two trial error claims in his brief on appeal from the denial of his PCR Petition or in his Petition for Review to the Oregon Supreme Court. As such, Petitioner did not exhaust the claims alleged in Grounds Two and Three. Because he cannot now do so[2], the claims are procedurally defaulted.

[2]Under Or. Rev. Stat. § 138.071, direct appeals must be filed not later than 30 days after the judgment or order appealed from was entered in the register. Under Or. Rev. Stat. § 138.550(3), all PCR claims must be asserted in the original or amended petition unless they could not reasonably have been asserted therein, and any claims no so asserted are deemed waived. Finally, Or. Rev. Stat. § 2.520 requires petitions for review to Oregon's Supreme Court to be filed within 35 days of the Oregon Court of Appeals' decision.

Petitioner presents no evidence of cause and prejudice or a fundamental miscarriage of justice excusing his procedural default of the claims alleged in Grounds Two and Three. Accordingly, Petitioner is not entitled to habeas corpus relief on these claims.

**III. Relief on the Merits**

**A. Legal Standards**

Under 28 U.S.C. § 2254(d)(1), habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (l) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Instead, habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the ... case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U .S. at 413), *cert. denied*, 546 U.S. 963 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

A federal court considering a habeas petition must also give considerable deference to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Both subsections

(d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. *Lambert*, 393 F.3d at 976-77.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 790 (citations omitted).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether a defendant was prejudiced by ineffective

assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

**B. Analysis**

Petitioner alleges his trial attorney provided constitutionally ineffective assistance when he allowed the case to proceed to a stipulated facts trial and when Petitioner did not understand that he would not be allowed to present evidence and/or testify to the court. Petitioner contends that, had he known so, he would never have agreed to proceed.

During the stipulated facts trial, the judge engaged in the following colloquy with Petitioner and his trial attorney:

> COUNSEL: Your honor, after lengthy discussion with Mr. Myers, he has indicated that he would like to proceed by a stipulated facts trial. There are no negotiations regarding the sentencing.
>
> He understands that at this time the State will put on the prima facie case about who they would call and what testimony would be elicited on the stand if -- and he will be stipulating that that's the testimony that would be before the Court.
>
> He understands that there would not be an argument from defense counsel regarding this matter. He understands that, in all likelihood, he will be found guilty of this crime. And he has indicated that that's the way he wants to do it.
>
> He believes that, on advice of counsel, that he has the greatest likelihood of getting a sentence that would not -- that would be within a range that's not what he wants but that is within the acceptable range for

> sentencing reasons. He's willing to go forward in this manner.
>
> THE COURT: Are you George Williams Myers?
>
> PETITIONER: Yes, sir.
>
> THE COURT: Mr. Myers, did you read and understand this "Election to Waive Jury Trial" form?
>
> PETITIONER: Yes. Yes, sir.
>
> THE COURT: And you signed it?
>
> PETITIONER: Yes, sir.
>
> THE COURT: And you understand you're giving up your right to a trial?
>
> PETITIONER: Yes, sir.
>
> THE COURT: And there will be no real suspense as to the outcome of the case?
>
> PETITIONER: Yes, sir.

Resp. Exh. 103, pp. 2-3. At the sentencing hearing two weeks after the trial took place, Petitioner made a lengthy statement to the court about what occurred on the night of the crime, about his past, and about his relationships with the victim and with Petitioner's wife.[3] At no time in his statement did Petitioner express any confusion about or dissatisfaction with the stipulated facts trial proceedings.

---

[3]Petitioner's statement, which is too lengthy to repeat here, is reported at pages 12-23 of Respondent's Exhibit 103, Transcript of Sentencing.

In the PCR proceeding, the State submitted an affidavit from Petitioner's trial attorney stating, in pertinent part, the following:

> 10. I explained to petitioner, as is my practice, the procedure of a stipulated facts trial: That the deputy district attorney would recite, from the police report, the testimony that would be offered to support the elements of the crime charged. And that petitioner and I would then stipulate to the evidence that would be introduced at trial. That thereafter, the judge would then decide guilt, based upon the stipulated evidence. I specifically informed petitioner that the judge would, in all probability, find petitioner guilty of the charge of Assault I. Further, I told petitioner, as is my regular practice to tell my clients, that we would not have an opportunity to tell the judge what his evidence would be at the time of the stipulated facts trial. I also inform them, as I did petitioner, that they would be entitled to explain the circumstance at the time of sentencing.
>
> 11. After petitioner agreed to participate in a stipulated facts trial, petitioner and I appeared before the Honorable Maurice K. Merten on September 12, 2002. In petitioner's presence, I informed the Judge Merten [sic] that I had a lengthy conversation with petitioner, and that petitioner wished to proceed with a stipulated facts trial; that the State would explain who they would call as witnesses; what their testimony would be; and that petitioner would be stipulating that such evidence would be before the court. I also informed Judge Merten that petitioner understood that he would be found guilty.
>
> 12. Thereafter, Judge Merten confirmed that petitioner understood he was waiving his right to a jury trial and that there was no suspense as to the outcome of the case. Deputy District Attorney Gardner recited the facts, and Judge Merten found petitioner guilty of Assault I.
>
> 13. I believed that petitioner understood what a stipulated facts trial involved, and that we would not be presenting any contrary evidence at that time. If I

> had any question regarding petitioner's understanding of the procedure, the inevitable outcome, and the reasons for proceeding in such a manner, I would have given further explanation or would have elected to present the case to a jury.

Resp. Exh. 114, pp. 3-4.

The PCR trial judge considered this evidence, along with Petitioner's denial that he understood the ramifications of agreeing to a stipulated facts trial. The PCR trial judge concluded:

> THE COURT: Okay, I have a five-page affidavit of [Petitioner's trial attorney], and I don't just accept these point-blank because he was the Petitioner's attorney, but what he says -- but what [the attorney] says in his affidavit is supported by almost everything in the record -- the police reports, the testimony of [Petitioner] in the sentencing memo, as was just pointed out by [Respondent's counsel]. At no time did [Petitioner] say, "Hey, wait a minute. Wait a minute. This isn't what I bargained for. This is not -- this is -- I though I was going to have a trial,["] like he's said today. Nowhere in any of that does that appear in the record.
>
> I also think that it is clearly supported in the record that the statement that [Petitioner's attorney] said, "I also told Petitioner that I did not believe an acquittal was likely. I told him the most we could hope for was a hung jury, but that a mistrial would lead to a retrial of the case, not an acquittal."
>
> And he pointed out that the victim was prepared to speak in favor of the Petitioner, and his ex-wife was supportive, et cetera.
>
> All of these point to the fact that a trial would not have been won, and that [Petitioner] knew exactly what he was doing.
>
> So I find that the petition has not been proven, and I will dismiss the petition.

Resp. Exh. 119, pp. 20-21.

The PCR trial court's conclusion was not contrary to or an unreasonable application of *Strickland*. Petitioner did not establish that his trial attorney provided constitutionally ineffective assistance of counsel, and this Court cannot conclude there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents as reasonable jurists." *Harrington*, 131 S. Ct. at 786. Accordingly, Petitioner is not entitled to habeas corpus relief on the claim alleged in Ground One.

**IV. Claim Not Alleged in Petition for Writ of Habeas Corpus**

Finally, the Court notes the arguments in Petitioner's Brief that trial counsel also was ineffective for failing to address and respond to Petitioner's mental health issues and that the trial court failed to inquire as to whether Petitioner was competent to waive his rights. These arguments were not, however, alleged in any claim in the Petition for Writ of Habeas Corpus. As such, the claims are not properly before this Court. *See* Rule 2(c), Rules Governing Sec. 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to specify all grounds for relief); *Green v. Henry*, 302 F.3d 1067, 1070 n.3 (9th Cir. 2002) (claims not raised in the petition need not be considered); *Marquette*, 2010 WL

4235889 at *2 (same); *Callendar v. Hall*, Civ. No. 07-1099-KI, 2010 WL 1450524, *10 n.5 (D. Or. April 08, 2010) (same).

**CONCLUSION**

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus.

Further, the Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 8th day of April, 2011.

/s/ Anna J. Brown
ANNA J. BROWN
United States District Judge

 P:\Brown-LawClerks\08-1032myers0406opin.wpd